Commonwealth ex rel. Haun *v.* Cavell, Appellant.

Argued June 12, 1959. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT and GUNTHER, JJ., absent).

*Frank P. Lawley, Jr.,* Deputy Attorney General, with him *Robert A. Jarvis,* and *Anne X. Alpern,* Attorney General, for appellant.

*Henry S. Moore,* for appellee.

OPINION BY WOODSIDE, J., September 16, 1959:

This habeas corpus case, brought by a prisoner to obtain his release from the Western State Penitentiary, presents a legal problem with serious implications. It comes before us on appeal by the Attorney General

from an order of the court below directing that the petitioner be discharged.[1]

If the holding of the court below is correct, there are a substantial number of prisoners being illegally detained. If these prisoners are discharged, there will be released upon society, without any supervision, many of the Commonwealth's worst criminals, all of whom have committed crimes while on parole from sentences imposed for serious offenses, and all of whom the Pennsylvania Board of Parole has refused to reparole because it has concluded that the Commonwealth would be injured thereby. As it would be a serious matter to detain these prisoners illegally *or* to release them improperly, this case presents a question which demands most careful consideration.

For us to recount all of the petitioner's offenses, sentences, commitments, detainers, releases, paroles, reparoles, and the dates of each, would take the reader into a mass of time calculations which would only becloud the legal issue here involved.

The legal problem is brought into focus by the following facts: The petitioner was sentenced for felonious assault to the Western State Penitentiary for a term of 3 to 6 years to be computed from April 19, 1952. After completing his minimum sentence on April 19, 1955, he was paroled by the Board of Parole to serve "back time" in the Allegheny County Workhouse on a prior robbery sentence of 2 to 4 years on which he has served the minimum, and from which he was on parole when the assault was committed. Since April 19, 1955, he has been in prison 2 years on the prior sentence, 16 days on a detainer, and, after a few months on parole, 6 months on a sentence for carrying concealed deadly weapons committed while on parole from his assault

---

[1] The prisoner was not released as we granted a supersedeas, upon application of the Attorney General.

sentence. At the expiration of the 6 months' term (December 11, 1957), the Board of Parole recommitted him to the Western State Penitentiary as a parole violator. His maximum was listed as expiring three years later, on December 11, 1960.

The question here is whether the law gives the petitioner credit on the balance of his 6 year maximum assault sentence for the time he spent in prison on other offenses after the expiration of the minimum of his assault sentence. If it does, he had 2 years, 6 months and 16 days credit on the remaining three years of his assault sentence when he was reentered in the penitentiary as a parole violator on December 11, 1957. He would thus have had less than 6 months to serve and would now be illegally detained, and entitled to be discharged on the writ of habeas corpus.

When the petitioner received the assault sentence, he had an unserved term of 6 years from April 19, 1952 on that sentence, and an unserved term of 2 years for parole violation on his prior sentence, a total of 8 years. The Board of Parole has no power to reduce the maximum. Any attempt on the part of the legislature to give the board power to reduce the duration of the sentences would be unconstitutional. *Commonwealth ex rel. Banks v. Cain*, 345 Pa. 581, 589, 28 A. 2d 897 (1942).

As the release of the prisoner prior to the expiration of his maximum sentences is a matter of grace within the discretion of the board, it could have held him in prison until he served all of the six year assault sentence, and thereafter until he served the remaining two years on the prior robbery sentence. *Commonwealth ex rel. Lynch v. Ashe*, 320 Pa. 341, 344, 182 A. 229 (1936); *Commonwealth ex rel. Davidson v. Maroney*, 177 Pa. Superior Ct. 82, 85, 110 A. 2d 822 (1955). Eight years was the sentence of the law, modified only by the right

of the Board of Parole to parole him at any time after the expiration of his three year minimum.

The petitioner contends that when he was recommitted as a parole violator on December 11, 1957, the law required the board to give him credit for the time served subsequent to April 19, 1955 on the other offenses.

He bases this contention on section 21.1, added to the Act of August 6, 1941, P. L. 861 by the Act of August 24, 1951, P. L. 1401, and subsequently amended in a manner not important in this case, by the Act of June 28, 1957, P. L. 429, 61 PS §331.21a, which reads, in part, as follows:

"(a) Convicted violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record, may at the discretion of the board, be recommitted as a parole violator. If his recommittment is so ordered, *he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole.* The board may, in its discretion, reparole whenever, in its opinion, the best interests of the prisoner justify or require his release on parole and it does not appear that the interests of the Commonwealth will be injured thereby. . . ." (Emphasis supplied)

When the petitioner was recommitted as a parole violator on December 11, 1957, the above provision required that he be "reentered to serve the remainder of the term which said parolee would have been compelled

to serve had he not been paroled." The "remainder of the term" refers to the portion of the sentence actually left on the date of the release on parole (April 19, 1955), and not on the date of violation of the parole. See *Commonwealth ex rel. Meinzer v. Smith,* 118 Pa. Superior Ct. 250, 254, 180 A. 179 (1935), which involved this expression contained in another statute relating to parole. Had the petitioner not been paroled on April 19, 1955 to serve his back time on the prior sentence, "the remainder of the time which [he] would have been compelled to serve" was three years. Thus, when he was reentered as a parole violator for his weapon violation, the above provision required that he should be reentered for three years.

The petitioner contends, however, that it is not this provision of the above section which governs his case, but the following one which states that "he shall be given no credit for the time at liberty on parole." He argues that he was not "at liberty on parole" when he was in prison for the other offenses, and since the act says he *shall not* be given credit for the time at liberty, the law must intend that he *shall* be given credit for the time he was imprisoned on other offenses. The statute does not say that he shall be given credit for the time spent in prison on other offenses, but the court below implied this by applying the converse of the language of the statute.

Of course, he cannot be given credit on his assault sentence for the time he served on the other sentences, and at the same time "be reentered to serve the remainder of the term which [he] would have been compelled to serve had he not been paroled."

The petitioner's answer to this seems to be that he was not "paroled" on April 19, 1955 from his assault sentence because he was released to the workhouse to serve back time instead of being released to the street.

In effect, he argues that the parole was effective to permit him to start the back time in the workhouse, but was not effective to release him from his penitentiary sentence.

Under this theory of the law, he would be serving his back time and his assault sentence concurrently. We have said both before and since the Act of 1951 that there can be no longer any doubt that the prisoner's current sentence and his back time on a prior sentence can not run concurrently. *Commonwealth v. Conrey,* 184 Pa. Superior Ct. 575, 578, 135 A. 2d 810 (1957); *Commonwealth ex rel. Gallagher v. Martin,* 183 Pa. Superior Ct. 540, 132 A. 2d 706 (1957); *Commonwealth ex rel. Brawner v. Day,* 181 Pa. Superior Ct. 568, 571, 124 A. 2d 410 (1956); *Commonwealth ex rel. Kunkle v. Claudy,* 171 Pa. Superior Ct. 557, 91 A. 2d 382 (1952); *Commonwealth ex rel. Little v. Keenan,* 168 Pa. Superior Ct. 125, 78 A. 2d 27 (1951); *Commonwealth ex rel. Westwood v. Gackenbach,* 169 Pa. Superior Ct. 637, 640, 84 A. 2d 380 (1951); *Commonwealth ex rel. Lerner v. Smith,* 151 Pa. Superior Ct. 265, 30 A. 2d 347 (1943). "In no event did the Legislature intend the sentences to be served concurrently," said President Judge Rhodes in *Commonwealth ex rel. Dion v. Martin,* 183 Pa. Superior Ct. 310, 315, 131 A. 2d 150 (1957).

In *Commonwealth ex rel. Magarahan v. Burke,* 171 Pa. Superior Ct. 111, 114, 90 A. 2d 247 (1952), we held that the parole violator was "entitled to no credit on his maximum sentence for the time he was not a violator by crime while out on parole *or for the years spent in confinement in the Utah Penitentiary.*" (Emphasis supplied)

Returning to section 21.1, supra, we note that the part of the section not quoted above goes into detail concerning the order which the back time and the cur-

rent sentence are to be served. This is further indication that the legislature did not intend the two terms to run concurrently.

What the legislature must have intended by "at liberty on parole" is not at liberty from *all* confinement but at liberty from confinement *on the particular sentence* for which the convict is being reentered as a parole violator. Any other interpretation would be in conflict with other provisions of the statute, and with the long established policy of the Commonwealth. During the time that a convict may be on parole from a particular offense he might be confined in a Pennsylvania prison on another offense, or in a prison of another state, or in a federal prison, or in a mental institution, or in an enemy prison camp during a war. It was not the intent of the legislature to have the words "at liberty" to mean freedom from confinement under all these and other conceivable circumstances.

The petitioner was granted constructive parole on April 19, 1957, from his assault sentence to serve on his former robbery sentence. Although the term "constructive parole" is not contained in the statute, it has been used extensively by administrative authorities, and has been recognized by the courts for many years. See *Commonwealth ex rel. Campbell v. Ashe,* 141 Pa. Superior Ct. 408, 411, 15 A. 2d 409 (1940); *Money v. Penna. Board of Parole,* 68 Dauphin 238 (1955).

The petitioner does not question that the board had the power, as it undoubtedly did, to compel him to serve the maximum of 6 years on the assault charge and then compel him to serve the 2 years back time on the robbery charge. Instead of doing this, the board paroled him at the minimum of the assault sentence and permitted him to serve his back time on the robbery sentence. Thus he was released from prison at the end of 5 years, for which he now claims he is entitled to credit for 7 years on his 8 years combined maximum.

In the recent case of *Commonwealth ex rel. Salerno v. Banmiller,* 189 Pa. Superior Ct. 156, 162, 149 A. 2d 501 (1959), we said:

"It has been the intent of the legislature, consistently expressed since 1911 and uniformly recognized by the courts, that a parolee, when sentenced for a crime committed while on parole, shall be required to serve the balance of time remaining on his first sentence (subject, however, since 1941 to reparole by the board). This legislative intent, so basic and vital to our parole system, cannot be defeated even by the intent of a sentencing judge. Commonwealth ex rel. Harmon v. Burke, supra, 171 Pa. Superior Ct. 547, 554, 91 A. 2d 385 (1952)."

Section 10 of the Act of June 19, 1911, P. L. 1055, as amended last in 1931 (61 PS §305), is the law today, except as repealed in part by implication by the Act of August 6, 1941, P. L. 861 and its amendments and supplements, 61 PS §331.1 et seq. Under this section, a convict returned to prison for commission of a crime while on parole is not given credit for the time on parole and is required to serve "the remainder of the term (without commutation)." This was the rule and practice of this Commonwealth from the passage of the original indeterminate sentence Act of May 10, 1909, P. L. 495, 19 PS §1081 et seq. See *Commonwealth ex rel. Meinzer v. Smith,* supra, 118 Pa. Superior Ct. 250, 252, 180 A. 179 (1935). Since the Board of Parole Act of 1941, the board may reparole a prisoner serving back time under its jurisdiction, if "the best interests of the prisoner justify or require his release on parole and it does not appear that the interests of the Commonwealth will be injured thereby." Section 21.1, supra.

Following the decision in *Commonwealth ex rel. Tate v. Burke,* 364 Pa. 179, 71 A. 2d 241 (1950), Section 21.1, supra, was added to the Act of 1945, in order

to strengthen the board's power to retain technical parole violators in custody by calculating the maximum in a way less favorable to the convict. See *Commonwealth ex rel. Davidson v. Maroney*, supra, 177 Pa. Superior Ct. 82, 85, 110 A. 2d 822 (1955). It is improbable that the legislature intended to restrict the power of the board to supervise those who violated their parole by the commission of another crime and expand its power to supervise those parolees who committed only technical violation.

The policy of this Commonwealth has been firmly established since the earliest days of parole that a convict who commits a crime while on parole must serve his back time and his sentence for the new crime independently and that he cannot serve the two concurrently. This firmly established policy of the Commonwealth is recognized by the judiciary, the parole and prison administrators and the legislature itself. If the legislature intended to change this policy, it would have done so by a direct and positive provision. We should not infer such an important and serious change in policy by interpretation of a provision which makes no reference to the credit to be given a parole violator who serves time on other offenses after parole from the offense on which he is being reentered in prison.

Judge NEELY, of the Dauphin County Court, twice passed on this identical question, holding as we do here. See *Commonwealth ex rel. Kascak v. Johnston*, 68 Dauphin 11 (1955) ; *Money v. Penna. Board of Parole*, 68 Dauphin 238 (1955).

The order and decree of the court below granting the writ of habeas corpus is reversed and the petition for the writ is dismissed.